ESTATE PLANNING CORPORATION, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 82191, 83418.   Promulgated February 25, 1938.

*Albert Hubschman, Esq.,* and *Louis Goldring, Esq.,* for the petitioner.

*F. L. Van Haaften, Esq., L. H. Rushbrook, Esq.,* and *Donald P. Moyers, Esq.,* for the respondent.

OPINION.

TYSON: These proceedings have been consolidated. For the year 1932 respondent has determined a deficiency in income tax in the amount of $2,356.13. For the year 1933 respondent has determined

---

a total deficiency of $3,998.61, consisting of income tax in the amount of $3,115.65 and excess profits tax in the amount of $882.96.

For both years the only assignment of error is the respondent's disallowance of a claimed deduction of $24,000 as interest paid at 4 percent on a $600,000 bond issue of the petitioner. The respondent determined, for both years, that there were no tangible or substantial assets behind such bonds, that they were issued without consideration, and that the interest payments thereon were mere distributions of profits and not deductible from income.

The fundamental issue here is whether the bonds constituted an indebtedness within the meaning of section 23 (b) of the Revenue Act of 1932, reading in part: "All interest paid * * * on indebtedness."

The petitioner was incorporated under the laws of the State of New York in October 1925, with its office to be located at Buffalo. It was authorized to issue a total of 100 shares of no par value for such consideration as might be fixed by the board of directors. It was authorized to issue its bonds, debentures, or obligations. On December 24, 1928, there was filed in the office of the Secretary of State of New York a certificate of change of location of petitioner's office to New York City, which certificate was executed on December 20, 1928, by Clinton Davidson as the holder of record of all of petitioner's outstanding shares entitled to vote.

The minutes of a meeting of petitioner's board of directors, consisting of Clinton Davidson and Flora S. Davidson, held on December 20, 1928, in New York City, set forth, *inter alia*, the ratification of the issuance of 30 shares of petitioner's stock to Clinton Davidson and the direction that the amount of $180, incorporation expense and certain taxes paid by Davidson, be set up on the books as the consideration for the issuance of such shares and, further, that there had been presented to petitioner the following proposal:

December 20, 1928.

The Estate Planning Corporation,
    60 Wall Street,
        New York, N. Y.

Gentlemen:

I hereby offer to transfer to you the business carried on by me in the City and State of New York as a financial and estate planning advisor and life insurance broker, together with such of the assets and good-will of said business and subject to such liabilities as of September 1, 1928 as are shown by the statement submitted herewith, the business carried on by me since that date to be taken as carried on for the benefit of the corporation. The price is $600,000, and I offer to accept in payment therefor the debenture bonds of the corporation for that amount bearing interest from September 1, 1928 at the rate of 4% per annum payable quarter-annually on the first days of March, June, September and December in each year until the principal sum shall have been fully paid.

Said bonds to be due September 1, 1948 subject to the right of the corporation to redeem the same wholly or in part at par and accrued interest at its option in advance of said date and to contain such other terms and conditions as may be agreed upon between us.

Yours very truly,

[Signed] CLINTON DAVIDSON.

The same corporate minutes further set forth that petitioner was organized for the purpose of taking over the business carried on by Davidson, the acceptance of Davidson's offer, and the authorization for the issuance of petitioner's bonds to Davidson, and also set forth a resolution that Clinton Davidson be employed as general manager of petitioner from September 1, 1928, to December 31, 1929, and that "all commissions allowed him by Insurance Companies on initial premiums of policies written during that period to be turned over by him to the Company, but that he may retain the right to any and all renewal commissions on such policies and that he be paid no salary for the four months ending December 31, 1928 and a salary for the year 1929 of $20,400 payable monthly, to be in full for his services to the corporation in every capacity."

In December 1928 petitioner issued to Clinton Davidson its debenture bonds, dated September 1, 1928, of a total face value of $600,000. Each of such bonds contains, *inter alia*, a promise to pay the principal sum of $10,000 on September 1, 1948, unless previously paid, and interest thereon at 4 per centum per annum and the express agreement that the payment of the principal and interest, whether due or past due, shall be in all respects subordinate to any and all claims against the company based on debts, obligations, or liabilities incurred by it in the regular course of its business.

Such bonds were issued by petitioner to Davidson for the latter's business. Prior to 1932 the bonds were transferred by Davidson to himself as trustee of a trust established for the benefit of members of his family. The payments as interest during each of the years 1932 and 1933 as provided for in the bonds were made by petitioner to Davidson as trustee.

During the years 1932 and 1933 the petitioner paid no salary to Clinton Davidson, its president, and no deduction was claimed on its returns for those years as "Compensation of Officers." The tax returns for those years describe petitioner's business as "Planning Investments and Distribution of Estates" and set forth petitioner's balance sheets, which disclose total assets in the amounts of $592,286.60 and $596,872.39, respectively, including therein the amount of $575,564.86 as good will, and the liabilities set forth include bonds $600,000 and common stock $1,000. The petitioner's capital stock tax return for 1933 shows common stock, 50 shares no par value,

$1,000, and a declared value of $40,000 on which a capital stock tax of $40 was paid.

The petitioner contends that the sole question presented for determination by this Board is whether the certificates issued by petitioner to Clinton Davidson in December 1928 in the face amount of $600,000 were in fact bonds or preferred capital stock, and cites *Commissioner* v. *O. P. P. Holding Corporation*, 76 Fed. (2d) 11, affirming 30 B. T. A. 337, as a case involving the identical question on similar facts and therefore determinative of whether the payments here involved constituted interest and were deductible as such.

In the *O. P. P. Holding Corporation* case, *supra*, it was held that the certificates there in question were not in the nature of preferred stock, but were bonds in both form and substance and created a debtor-creditor relation so that the interest paid on such bonds was deductible from the O. P. P. Holding Corporation's gross income. The bonds of the O. P. P. Holding Corporation were issued as the larger part of the purchase price paid for Oneida Co. stock and, in effect, the court further held that such stock had a value substantially equal to the total amount of the consideration paid therefor.

Upon consideration of the characteristics of the certificates issued by petitioner to Davidson in December 1928, and upon applying the reasoning in *Commissioner* v. *O. P. P. Holding Corporation*, *supra*, we conclude that, in form, such certificates were bonds. Also see *Helvering* v. *Richmond, Fredericksburg & Potomac Railroad Co.*, 90 Fed. (2d) 971, affirming 33 B. T. A. 895, and *Commissioner* v. *Proctor Shop, Inc.*, 82 Fed. (2d) 792, affirming 30 B. T. A. 721.

However, in our opinion, this proceeding presents not merely the question of whether the certificates constitute bonds, as contended by petitioner, but the further and more fundamental one of whether or not any legal consideration passed from Davidson to the petitioner for the issuance to him of the bonds. The respondent has determined that the $600,000 face value bonds issued by the petitioner to Davidson in December 1928 were issued without any consideration, and he contends that consequently there was no "indebtedness" of the petitioner to the holder of its bonds within the purview of section 23 (b) of the Revenue Act of 1932.

If no consideration passed, then, under former decisions of this Board and the courts, the interest paid on the bonds was not deductible from the gross income of petitioner as "interest paid * * * on indebtedness" within the meaning of section 23 (b), *supra*.

In *Simon Benson*, 9 B. T. A. 279, it was held that notes which were the subject of gifts, and without legal consideration, did not create enforceable debts and the interest provided for therein and paid by

the donor was not deductible as "interest paid * * * on indebtedness" within the meaning of a section of the applicable revenue act identical with section 23 (b), *supra.* Cf. *Gilman* v. *Commissioner*, 53 Fed. (2d) 47, affirming 18 B. T. A. 1277.

In *Eugene C. Eppley*, 25 B. T. A. 300, it was held that payments made as interest under a void contract were not deductible as interest, because the contract did not create an indebtedness within the meaning of the applicable revenue act.

In *Sand Springs Railway Co.*, 21 B. T. A. 1291, it was held that where bonds were issued by a corporation without consideration and such bonds were not held by a purchaser in good faith for a valuable consideration the amounts paid by the corporation as interest on such bonds were not deductible as "interest", since there was no enforceable indebtedness.

We think that cited authorities establish the principle that payments made as interest are not deductible from gross income unless made upon obligations supported by a legal consideration.

Our inquiry then becomes, Did Davidson pay to petitioner a legal consideration for the issuance to him of its bonds?

Petitioner's corporate minutes of December 20, 1928, recite that bonds in the amount of $600,000 were to be issued to Davidson for the transfer to petitioner of Davidson's business as financial and estate planning adviser and life insurance broker, together with such of the assets and good will of said business and subject to such liabilities "as are shown by the statements submitted herewith." The statement of the assets and liabilities mentioned is not in evidence and other than the above recitations in the minutes there is no evidence as to the character of the business transferred, or its value, except the testimony of Davidson himself on direct examination as follows:

Q. To whom were the bonds issued, Mr. Davidson?
A. They were issued to me.
Q. For what were they issued?
A. For my business, which was worth more than the amount of the bonds.

This evidence is not sufficient, in our opinion, to establish the fact that a legal consideration passed from Davidson to petitioner for the bonds. Whether or not Davidson's business, as a fact, possessed any value is a vital one in this proceeding and "is a fact to be established as are other facts in dispute. It is not a sufficient showing for petitioner to say" that his business had value. "Such a characterization, standing alone, proves nothing. The taxpayer must give us the facts on which he predicates the conclusion and these facts must bring to the Board a conviction that the petitioner's conclusion was correct." *M. Rea Gano*, 19 B. T. A. 518, 528.

That further pertinent facts as to the character of the business transferred and its value could have been adduced is evidenced by the following testimony on redirect examination of Davidson, given immediately after he had testified that "The written agreement is contained in these minutes which was signed by me."

Q. Was there any oral agreement other than this written agreement?
A. No.
Q. Is there any other facts in connection with it that you have personal knowledge of, that will clarify this agreement?
A. There are plenty of facts as to why I sold the business at that price, and why the corporation was willing to pay that price. There are plenty of facts in regard to that.
Q. Never mind that.

The petitioner has failed to establish error in the respondent's prima facie correct determination that petitioner's bonds were issued for no consideration. Upon such determination of fact and the application thereto of the principle established by certain of the above cited authorities, the respondent's disallowance of the claimed interest deduction is approved.

*Decision will be entered for the respondent.*